IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA       *

      vs.                      *   CRIMINAL NO. MJG-16-0430

MAHMOOD HUSSAIN SHAH           *

*   *   *   *   *   *   *   *   *

<u>MEMORANDUM AND ORDER</u>

The Court has before it the Government's Motion Regarding Intrinsic Evidence Alternatively as 404(b) Evidence [ECF No. 90], Defendant's Motion in Limine [ECF No. 96], and the materials submitted relating thereto. The parties have also raised additional evidentiary matters. The Court has held a motions hearing and pre-trial conference, has had the benefit of arguments by counsel, and will address all pending matters.

I. <u>Background</u>

Defendant Mahmood Shah was charged with six counts of Wire Fraud, in violation of 18 U.S.C. § 1343 [ECF No. 1]. On March 3, 2017, he pled guilty to one of the Counts before Judge Bennett [ECF No. 35], but moved to withdraw his guilty plea at sentencing. His motion was first denied and then granted upon reconsideration [ECF Nos. 60 and 75]. The case was transferred to the undersigned, and Defendant now faces a jury trial which will begin on February 12, 2018.

Defendant Shah and his Co-Defendant, Muhammad Rafiq, were owners of Corner Grocery, a convenience store in Baltimore. Gov.'s Mot. at 3, ECF No. 90. The Government contends that starting in 2010, Shah and Rafiq engaged in a scheme to defraud the Supplemental Nutrition Assistance Program ("SNAP"), a program that uses federal tax dollars to subsidize "eligible food" for low-income households.[1]

In Maryland, SNAP is administered using Electronic Benefits Transfer ("EBT") cards, and retailers like Corner Grocery use a point of sale machine ("POS") to access the benefits. Id. at 4. Beneficiaries use the EBT cards by swiping them through the retailer's POS machine, which allows the EBT system to authorize the transaction and then transfer the requested benefit to the retailer's bank account directly. Id. Before accepting SNAP benefits, retailers must submit an "FNS Form 252, Food Stamp Program Application for Stores" and certify that it is a violation to "trad[e] cash for Supplemental Nutrition Assistance Program benefits (i.e. trafficking)." Id. Shah signed this certification on December 10, 2009. Id.

The Government alleges that starting in October 2010, Shah and his Co-Defendant defrauded SNAP of benefits "by unlawfully

---

[1] "Eligible food" includes staples like bread, milk, and eggs, or other types of products like candy, cookies, and certain household supplies, but it does not include alcohol, cigarettes, or gasoline. Gov.'s Mot. at 3 n. 3, ECF No. 90.

exchanging food stamps for cash, and in return charging the customer's EBT card double the amount." Id. In a typical transaction, customers would approach Shah or Rafiq to "sell stamps" (i.e., redeem SNAP benefits for cash) and the Defendants would require the customer to buy a low cost item to mask the transaction. Id. Defendants would then swipe the customer's EBT card for the low cost item plus double the amount of cash the customer wanted. Id. at 5. The requested cash was given to the customer, and Shah and Rafiq would keep the remainder in their corporate bank account. Essentially, the Defendants allegedly "trad[ed] cash for SNAP benefits, and stole from the government the equivalent amount by charging a 100% fee to the customer's SNAP benefits." Id. As a result, Defendants received "over $1.6 million in EBT deposits for food sales that never actually occurred or were substantially inflated." Id.

## II. The Government's Motion Regarding Intrinsic Evidence Alternatively as 404(b) Evidence

Shah will face trial for six counts of Wire Fraud. At trial, the Government intends to introduce undercover agent testimony, video and audio recordings of the defrauding transactions, and special agent testimony about Corner Grocery's EBT transactions. Id. at 5-6. The Government also intends to call FBI Analyst Johnson,

who will testify about her "financial analysis of Corner Grocery." Id. at 6-7. Among other things, this analysis will show that in order to have access the large amount of cash needed to perform these transactions, Defendants withdrew cash from their corporate account in an amount totaling approximately 50% of the value of the EBT transfers, which was then allegedly used to pay back customers. Id.

As part of Johnson's testimony, the Government seeks to introduce Corner Grocery's corporate income tax returns for the years 2010 through 2016. Specifically, Ms. Johnson "will compare the Gross Receipts or Sales listed on those tax returns to the number of total food stamp transactions in those years," "analyze the Corner Grocery company account . . . to determine the total number of purchases of merchandise by Corner Grocery from third parties," and then "compare that number to the Cost of Goods Sold listed on the tax returns." Id. at 7. According to the Government, this will demonstrate that although Corner Grocery reported most or all of its food stamp transactions on its tax returns, it "vastly overstated its Cost of Goods sold." Id. at 8. Instead of representing the actual cost of the merchandise on the shelf, the reported Cost of Goods Sold allegedly appears to be a combination of purchased merchandise combined with the cash given out to its customers for the fraudulent transactions. Id. This would have the effect of

lowering the ordinary business income to the owners of the store on paper. Id.

The Government contends that the tax returns are admissible as intrinsic evidence and 404(b) evidence. The Court will address each argument in turn.

### 1. Tax Returns as Intrinsic Evidence

Evidence of the Defendant's other bad acts will not be deemed inadmissible under 404(b) if it is "intrinsic" to the crime. United States v. Cooper, 482 F.3d 658, 663 (4th Cir. 2007) ("Rule 404(b) only applies . . . to evidence relating to acts extrinsic to the conduct being prosecuted."). Evidence is intrinsic if it is part of the story of the crime or "served to complete the story" with respect to a particular charge. Id. (internal citations omitted). See also United States v. Lighty, 616 F.3d 321, 352 (4th Cir. 2010) ("acts are intrinsic when they are 'inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'").

The Government contends that the tax returns are admissible because they show how Defendant Shah and his Co-Defendant were able to account for gains attained through defrauding the SNAP program on their tax returns. Gov.'s Mot. at 8, ECF No. 90. Specifically,

the contention is that the tax returns show how "the defendants classified these payouts as expenses and deducted them from the gross receipts taken in as SNAP benefits" in order to prevent themselves from having to pay taxes on the portions returned to customers. Id. Defendant argues that the tax returns are irrelevant and unnecessary for proving the six counts of wire fraud, because (1) the tax returns were prepared after the transactions, and (2) the food stamp income was declared for tax purposes. Def.'s Opp. at 1-3.

The Court agrees with the Government that the alleged evidence is intrinsic to the charged crime. Defendant Shah has been charged with a financial crime (i.e., wire fraud), which naturally raises issues involving how the proceeds of that crime are accounted for on tax returns. He received SNAP benefits into his corporate account but then withdrew half of the money to return to customers. The Government is alleging that his tax returns are evidence of that exact transaction (i.e., Defendant purposely counting those withdrawals as Cost of Goods Sold on his tax returns so that he does not pay income on them, because he did not ultimately keep them).

The Court does not find Defendant's argument about timing to be persuasive. Rule 404(b) does not specify that the "other acts" introduced must have pre-dated or be contemporaneous with the charged act. Rather, the inquiry here is whether the evidence completes the

6

story or is inextricably intertwined with the charged crimes. Moreover, the fact that the proceeds were all reported on the tax return does not change the analysis. The evidence is not introduced to show tax fraud, but to show that Defendant made deliberate accounting decisions on his tax returns to cover up the scheme.

Accordingly, the Court shall allow the introduction of the tax returns at issue as intrinsic to the crime charged. However, the Court finds that it is appropriate to include a jury instruction that the tax returns are not to be considered as evidence of tax fraud, but only as evidence relevant to the Defendant's actions in covering up the charged conduct or accounting for the charged conduct.

### 2. Tax Returns as 404(b) Evidence

"Although not admissible to prove the defendant's character, evidence of other wrongs may be admitted to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" United States v. Lighty, 616 F.3d 321, 351-52 (4th Cir. 2010) (quoting Fed. R. Evid. 404(b)). For evidence to be admissible under 404(b), "it must be '(1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable.'" Id.

The third requirement, i.e. reliability, "involves a Rule 403 determination, that is, the probative value of the evidence must not be substantially outweighed by its prejudicial effect." Id. The Fourth Circuit has stated that the "possibly prejudicial effect of evidence can require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior." Westfield Ins. Co. v. Harris, 134 F.3d 608, 614 (4th Cir. 1998) (quoting Morgan v. Foretich, 846 F.2d 941, 945 (4th Cir. 1988)). Finally, "Rule 404(b) is 'an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition.'" United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009).

The Government argues that even if the evidence is not admissible as intrinsic to the crime charged, it is admissible in order to prove "intent, motive, knowledge, and lack of mistake or accident." Gov.'s Mot. at 10, ECF No. 90. The Defendant argues that this is impermissible character evidence because "the permissible story to tell about the Defendant is over, after the crime." Def.'s Opp. at 3, ECF No. 93.

The Court is satisfied that the tax returns are also admissible under Fed. R. Evid. 404(b) and Lighty. First, it is relevant to the Defendant's intention and motive to defraud SNAP that he manipulated

the Cost of Goods Sold expenses line in the tax returns in order to account for the cash that he had to pay back to his customers in the fraudulent EBT transaction.  It is also relevant to Defendant's knowledge and lack of mistake as to the fraud scheme (i.e., it shows how Defendant affirmatively ensured he did not pay taxes on all of the SNAP benefits that went into his corporate account).  It is necessary to explain whether there could be another reason for the cash withdrawals from the corporate bank account, and it is reliable because the Defendant signed the tax returns himself.

Finally, the Court finds that there is no significant prejudice to Defendant that would substantially outweigh the probative value of this evidence.  The evidence appears to be simple and relevant to the financial accounting of a financial fraud (and does not, for example, pose any risk of exciting the jury to emotion).  For the same reasons stated above, the Court does not find Defendant's argument about timing to be persuasive.  C.f. United States v. Matthews, 9 F.3d 1545 (4th Cir. 1993) (finding no abuse of discretion in allowing evidence under 404(b) when it was "close in time" to the charged offense).

Accordingly, the Court shall also allow the introduction of the tax returns at issue under 404(b).  As stated above, the Court will instruct the jury that the tax returns are not introduced for the

purpose of showing tax fraud or improper tax deductions, but only as evidence relevant to the Defendant's actions in accounting for or covering up the charged conduct.

III. <u>Defendant's Motion in Limine</u>

Defendant has filed a motion in limine seeking the exclusion of "[a]ll References to the Defendant Muhammad Rafiq's Plea of Guilt," "[t]he Videos and Audios [sic]" of the transactions that form the basis for the six counts, "[t]he Receipts of the alleged buys made by the unavailable cooperating witness from counts one through seven," and "[a]ny references to the unavailable cooperating witness." Def.'s Mot. at 3, ECF No. 96.

Defendant's evidence motion was filed in the afternoon on February 7, 2018, more than two weeks after the deadline for motions in limine. <u>See</u> Trial Scheduling Order at 1, ECF No. 86 (setting a deadline of January 22, 2018 for motions in limine). The trial is set to begin on February 12, 2018, which is only two full business days from the filing of the motion.

The "district court may set a date before which pretrial motions must be filed" and "[a] defendant's failure to make a pretrial motion before the court's deadline constitutes a waiver of the issue unless the court grants relief from the waiver for good cause." <u>United</u>

States v. McLean, 150 F. App'x 249, 252–53 (4th Cir. 2005); Fed. R. Crim. P. 12. The decision to deny a pretrial motion is discretionary, and the district court should consider the defendant's reason for the untimely filing. Id.

Here, Defendant's only explanation was that he received information about the death of a cooperating witness a day before the motions hearing date (i.e., February 6, 2018), which led him to request the exclusion of certain evidence. Although this could be a conceivable reason for the delay, the Defendant also requests the exclusion of evidence unrelated to the deceased cooperating witness. The Court finds that Defendant's Motion in Limine could be denied as untimely filed, but will also deny the motion on the merits.

### 1. Muhammad Rafiq's Guilty Plea

The Defendant requests that Muhammad Rafiq's guilty plea be excluded at trial, but does not offer any reason or legal rationale for the request. Def.'s Mot. at 3, ECF No. 96.

The request is premature. The Government intends to call Muhammad Rafiq at trial and may impeach Rafiq with his plea agreement if the occasion arises. Gov.'s Resp. at 5, ECF No. 97. The agreement may also be used by parties to assess Rafiq's credibility as a witness. Id. Indeed, Rafiq may not testify at all, and in that

case, the Government has stated that it will not seek to introduce evidence of the guilty plea.

At this point, the Court does not see any reason to exclude the guilty plea, but will consider objections made by counsel during the course of the trial. For example, the Court may be willing to instruct the jury that Rafiq has pleaded guilty only to his own guilt, and not to the guilt of his Co-Defendant Shah.

2. Video and Audio of Transactions; Cooperating Witness

The remainder of Defendant's requests falls into the same category. Defendant requests the exclusion of the video and audio recordings of the transactions underlying Counts Two through Seven (i.e., the six Counts that Defendant Shah is charged with), exclusion of "[t]he Receipts of the alleged buys made by the unavailable cooperating witness from counts one through seven," and exclusion of "[a]ny references to the unavailable cooperating witness." Def.'s Mot. at 3, ECF No. 96. Defendant's rationale appears to be that the "cooperating witness" allegedly carrying out one or more of those transactions is now deceased and unavailable to testify in court. The Court understands the Defendant to be making (1) an authenticity objection and (2) a hearsay objection.

The Government has stated that it will lay the foundation for

these videos through the testimony of Special Agent Stanley Wojtkonski, "who was present each time, set up the video recording, and initiated it prior to anyone entering Corner Grocery." Gov.'s Opp. at 2, ECF No. 97. The Special Agent has reviewed the footage and can identify the participants, voices, and locations on the recordings. Id.

The Court is satisfied that the Government's statements show that they have the ability to lay a proper foundation and make at least a preliminary showing of authenticity as to these videos. United States v. Branch, 970 F.2d 1368, 1370 (4th Cir. 1992) ("Before admitting evidence for consideration by the jury, the district court must determine whether its proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic."). The Special Agent's testimony, as described by the Government, would confirm how the recordings were made, retrieved, and secured as trial evidence. "[T]he ultimate resolution of authenticity is a question for the jury." Id.

The Court also finds that the evidence is not hearsay. The statements in the audio and video of the transactions are not offered for the truth of the matters asserted, but as operative or verbal acts. Defendant raised the concern that these statements could be misinterpreted by the jury, but this does not change the analysis.

Defendant is permitted to make his argument as part of his defense case, but that does not bear on whether the evidence is admissible.

Accordingly, the Court shall deny the Defendant's motion.

IV. <u>Other Evidentiary Issues Raised by Parties</u>

On February 9, 2018 at 4:37 PM, the Government sent chambers an email raising four additional evidentiary issues that parties could not agree upon and which required Court resolution. The email addresses the admissibility of: (1) testimony from customers during the charged scheme, (2) portions of Defendant Shah's custodial statement, (3) two 1099 forms in the file of Corner Grocery's tax preparer, and (4) Defendant Shah's personal tax returns from 2010 to 2015. During the motions hearing on February 12, 2018, the Government also objected to Defendant's introduction of an expert witness.

1. <u>Customer Testimony and Evidence</u>

The Government seeks to introduce the testimony of customers from Corner Grocery who engaged in EBT transactions in the store during the charged scheme, including transactions exchanging food stamps for cash. Defendant argues that this evidence constitutes prior bad acts and that these customers will be unable to identify Shah.

The Court finds that the evidence is intrinsic to the scheme to defraud the SNAP benefits program because it involves transactions that allegedly occur during the same time as the charged scheme. Whether the customers are able to identify Shah is not an evidence admissibility question at this stage. Defendant is free to cross-examine these witnesses to determine whether those identifications can be made.

2. Shah's Custodial Statements

The Government intends to introduce excerpts of recordings from the Defendant's two custodial interviews, which allegedly show the Defendant both admitting and denying the charged conduct.[2] Defendant argues that the entire recordings from both interviews should be given to the jury under the rule of completeness.

The Government has given Defendant the excerpts that it intends to introduce into evidence in the form of a highlighted transcript. Before the beginning of the trial day tomorrow, February 13, 2018, Defendant shall provide to the Government with additional excerpts, if any, it deems necessary to complete the record. The Court will address any further disputes about these custodial statements at that time.

---

[2] The Government's excerpts use 0.5 hours from 2.5 hours of total recordings.

3. Two 1099s in the File of the Tax Preparer for Corner Grocery

The Government intends to introduce two 1099s found in the files of Corner Grocery's tax preparer to show that Defendant was aware that IRS knew of Corner Grocery's electronic income. The tax preparer has some medical conditions which prevent him from testifying at trial. Defendant argues that these 1099s are inadmissible because (1) the Government cannot prove they are authentic, and (2) the tax preparer cannot come to court to testify about the documents.

Regarding foundation and authenticity, the Government has received business certifications for these documents, and will introduce the certifications. Defendant does not dispute that the business certifications were obtained, so Defendant's foundation argument is rejected. Regarding hearsay, the Court finds that these 1099 forms are statements of Defendant to the tax preparer and are admissible on that basis. They are not offered for the truth of the matters asserted, but to show that Defendant had these records in his possession, knew of them, and gave them to the tax preparer.

Accordingly, the Court will allow the introduction of the two 1099s referred to in the February 9, 2018 email to chambers.

### 4. Shah's Personal Income Tax Returns from 2010 to 2015

The Government seeks to introduce Defendant Shah's personal income tax returns in order to show that they were consistent with the corporate tax returns with regard to accounting for the allegedly fraudulently obtained SNAP benefits. Defendant wishes to have a stipulation of this fact instead of allowing the introduction of the personal tax returns, on the basis that the tax returns are irrelevant and may confuse the issues for the jury.

The parties may try to enter into a stipulation about the personal income tax returns. However, if the parties do not reach an agreement, the Court finds that these tax returns are admissible. They are relevant to how Defendant Shah failed to account for the allegedly fraudulent SNAP income in his personal income statement, because the cash that was returned to customers was deducted from the Cost of Goods Sold on the corporate tax returns and not reported as personal income. Once again, the Court will instruct the jury that this evidence is not being used to show tax fraud or tax evasion, but to show how Defendant covered up the actions for which he is now charged.

### 5. Defendant's Proposed Expert Witness

Over the weekend, the Government was informed of Defendant's intention to call an expert witness at trial. Defendant's expert witness is an owner of a small convenience store (allegedly similar to Defendant's store) who will testify to the conditions, security measures, and EBT transactions with customers at a typical convenience store.

If Defendant wished to call an expert, he was required to provide an expert report with those opinions months in advance of trial so that the Government may properly respond. The Court is unable to understand how the testimony would be relevant to the charged acts, but does not see any prejudice from this information coming in. Under the circumstances, before the beginning of the trial day on February 13, 2018, Defendant shall provide to the Government a written statement of the expert's proposed opinion, including a clear statement regarding its relevance to the case.

## V. Conclusion

For the foregoing reasons:

1. The Government's Motion Regarding Intrinsic Evidence Alternatively as 404(b) Evidence [ECF No. 90] is GRANTED.

    i. The Court will instruct the jury that the evidence is not admitted for the purpose of showing tax fraud.

2. Defendant's Motion in Limine [ECF No. 96] is DENIED.

    i. If requested, the Court will instruct the jury that Defendant Rafiq pleaded guilty only to his own guilt and not to Defendant Shah's guilt.

3. Before the trial day begins on February 13, 2018:

    i. Defendant Shah shall provide to the Government a written statement of his proposed expert's opinions and how those opinions are relevant to the case.

    ii. Defendant Shah shall provide to the Government the excerpts of Shah's custodial statement that he wishes to enter into evidence to complete the record.

4. The Government's objection to Defendant's expert witness testimony is pending.

5. The following evidence is admissible absent further objections and/or stipulations:

    i. Testimony and evidence from customers who engaged in EBT transactions with Corner Grocery during the time of the charged scheme,

    ii. The Government's excerpts of Shah's custodial statement,

    iii. The two 1099s in the file of Corner Grocery's tax preparer, and

    iv. Defendant's personal tax returns from 2010 to 2015.

6. The parties are not precluded from raising additional evidentiary objections during the course of trial.

SO ORDERED, this Monday, February 12, 2018.

                              /s/
                        Marvin J. Garbis
                   United States District Judge