# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## (Northern Division)

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | |
| ) | **Crim. No. CCB 16-0430** |
| **MAHMOOOD HUSSAIN SHAH,** ) | |
| **Defendant** ) | |
| ) | |
| ) | |

Defendant's Reply to Government's Response
To Defendant's Motion to Vacate

The Government makes several assertions which do not alleviate it of its duty to share whatever evidence it has seized from the Defendant with him in a timely manner. The Government provided critical video evidence (6) six months after the trial and seeks to shift the burden on the Defendant to repeatedly ask for it.

The Government contends that the Defendant was aware of the existence of the video and was made aware of the Government's Difficulty in accessing it. Its' contention that the Defense was aware it relies upon an obscure reference to a property receipt which refers to "Activision Video System s/n 081157030073".

Such a reference does satisfy the very specific request that the defendant made in this request for discovery seeking to view it. The Defendant asked The Government to:

> " 2. reveal and disclose the nature result and reports of any scientific test physical or mental examination or tests or measures or experiments made in connection with this case <u>whether completed or not</u>, including but not limited to analysis of tape recordings or wire taps, hand writing analysis fingerprint comparison and or voice identifications. "(Page 2 - Defendant's Request for Discovery- Document 85 filed 12/19/17)

The Defendant could not be more specific in its request to:

> 3. Permit the Defendants attorney <u>to inspect and copy</u> or photograph all books papers documents and photographs <u>videotaped motion pictures mechanical or electronic</u>

recordings buildings and places, crime scenes or tangible objects and all copies and portions thereof which are within the possession custody or control of The Government and which are material to the preparation of the Defendant's Defense, or might possibly be used by The Government as evidence during the presentation of its case in chief or its case, or which are obtained from or belong to the Defendant
(Page 3 - Defendant's Request for Discovery- Document 85 filed 12/19/17)

The Defendant concluded that this motion for discovery was continuing in nature.

The Government offers no explanation as to why it made representations to the Defendant's attorney when he appeared in the Government's office on Wednesday January 31st, 2018 to examine all evidence, that there was no more evidence it intended to introduce or belonging to The Defendant. If it were actively working on it, it had a duty to disclose this to the Defense. According to the government I was only made to know of the efforts on February 9th. After The Defense had appeared in their office and been misled into thinking there was nothing else in the Government's possession which may be of interest to the Defense in preparing its case. It was as if the Government began some shell game with the evidence.

After this meeting on February 5$^{th,}$ 2018, the Government filed its Reply to my Motion for Discovery and stated that;

"The Government has complied with all of it discovery obligations under Rule 16, Brady and Giglio, and the Discovery Agreement".

The Government further indicate that:

"The Defendant has not made any particularized showings of any discovery dispute".

(Both quotes found on page 2 of Document 92- Attached as Exhibit A)

In Essence The government was requiring the Defense to know what it does not know and faulting itself for believing in the personal assurance of the Government's Counsel that there was no more evidence in their possession of control.

**The Government Concedes it has not complied with Rule 16, Without Justification**

The Government had not complied with Rule 16 as asserted:

Rule 16(a)(1)(E) provides:

Upon the Defendants request, the Government must commit to defendant to Inspector and copy and photograph books papers documents and data photograph tangible objects building a

places or copies of portions of any of these items if the item is within the Governments possession, custody or control where;

1. The item is material to prepare the defense.

2. The government intends to use the item in this case in chief a trial or

3. The item was obtained from or belonging to the defendant.

The Government could decide not to use the video evidence, but it could not deny the Defendant access to it, after the request to see it. If the Government had provided the Defense with access to the corrupted and inaccessible DVD, it would has satisfied its obligation under Rule 16. The Defendant need not ask repeatedly. Its written request on December 19,2017 and its presence in the US Attorney's office was the first request. The second was the oral request on January 31st, 2018 while looking through what was stated as being everything else.

The Government contends that the Defense "did not ask" about video evidence. The Defense is now faulted for believing the Government's misrepresentations. In the vernacular of the streets of Baltimore, the Defendant is marked the sucker for believing the Government's written and personal misrepresentations of the truth.

### The Defense Was Never made aware that The Government was having difficulty accessing video evidence seized from the store.

The Government contends that the Defendant was made aware that it was having difficulty accessing the video files. It contains that it advised defendant's counsel of the difficulty by generously revealing internal communications between it's lead investigator and another office in a February 9th email to the Defense. The Defense denies this, and The Government does not offer evidence of this email. If it were true, under the circumstances in which it was revealed, The Government offers even further basis to vacate this judgment due to the untimely and inappropriate nature of it's supposed disclosure.

The court should take note that on February 9th the Defense received Exhibit 40.9 consisting of 44 pages as well as Exhibit 40.2 consisting of 312 pages. None of which was this supposed disclosure of this evidence.

On February 10 the Defense received another three exhibits from the Government 40.1 – 6. On Sunday, February 11th the Defense received nine government exhibits; the least of which consisted of four pages and the largest of which consisted of 3,632 pages.

The next day February 12th the trial began. The 44 pages to which Tthe Government refers was not among the more than 5000 pages the Defense received in the four days leading up to start of the trail. The Government does not provide proof of this email or the existence of these 44

pages within the 515 pages received on February 9th. The Defendant was not advised of the any problem with video evidence, it had already been told does not exist. Neither is the appearance of a DVR in a picture taken, featuring dozens of other items in the store, a notice which later bars access to its contents.

The Rules of Discovery provide for timely disclosure. If the rules do not discourage the government from delayed disclosure until the last minute the rule would be useless. <u>US v. Burke</u>, 571 F.3d 1048, 1056(10 th Cir.2009) cert denied, 130S.Ct. 565,175L.Ed.2d 391(2009).

"A document production was deemed not timely where a memo was produced among five reams of paper labeled 3500 material quotation mark delivered sometime on the Friday before the Monday, at a time presumably when a conscientious defense lawyer would be preoccupied working on an opening statement and witness cross examinations."<u>US. v. Gill</u>, 297F. 3-D 93, 105 Dash 107 (2d. Circuit 2002).

Mr. Shah's counsel received the equivalent of 10 reams of paper, one day before opening statements. This boarders upon Prosecutorial Misconduct.

## The Evidence was not Equally Unavailable

The Government submits that the evidence was somehow "equally unavailable" to both the Defense and The Government. Equal unavailability would've meant that the Defense had access to the DVR and its contents when the defendant appeared in the Government's office approximately eleven days before trial. The Government contends that the Defense did not ask again. The Defendant contends that the Government did not respond truthfully when specifically asked twice.

The Defense made a specific request and regardless of the state of such evidence, the Government is not alleviated of its obligation to provide it, merely by asserting that was trying to provide it to the Defendant it but did so too late for him to use it.

## The Government Concedes that the Evidence is Material to Punishment

The Government confines its argument to the materiality of the evidence towards guilt, while at the same time pointing to the Forensic accountants testimony that the calculation of losses included August 2016, the same dates shown in this video. The Government ignores the violation of due process for suppressed evidence which is material to punishment. The government's forensic expert included in her calculations of the loss those August 2016, $26 and above transactions specifically shown in this evidence.

This is an alleged economic crime. The court is expected to arrive at a figure which will in turn result in an offense level. The court will then be aided by the offense level and the sentencing table to arrive at punishment, if any. These video captures of actual transactions cross all realms of materiality and should be considered by the jury first for guilt them by the court for punishment, if still necessary. Any transaction shown on this video that Defense can disapprove reduces however marginally the associated losses. The court cannot however accept the untested assertions that the video depicts further criminal conduct, without hearing from the Defendant shown in the video and any other corroborating witness he may be able to produce from the video. No more reliable physical evidence exists with which the court can add or subtract. Justice does not result from an abbreviated exercise. Due process must be either waived or followed. The Government cannot waive it for Mr. Shah, neither by its words which are relied upon or its actions, which make The Defendants awareness too late.

The Government asked the court to broaden its focus from the $362 that the jury found to postulate its way to $1.7 million in losses. Then the Governments ask the court to limit its focus again and put blinders on to ignore August 2016. These dates and these transactions are specifically included in the calculation of the losses and therefore are directly material to the court's calculation. It is not as The Government suggests, an appropriate use of the courts discretion to focus on the small amount proven, them broaden its focus to see a large figure alleged, then then again limit its focus again to exclude evidence again. To choose where to look or ignore what can be seen, will always result in an unjust finding. The Rules of Discovery Process was to be the vanguard of Due Process.

### The Alledged $8 Illegal transaction shown actually undermines the basis for the 1.7-Million-dollar loss estimate.

The Government's has introduced an $8.00 illegal transaction. It contends that this makes their 1.7-million-dollar loss estimate "likely conservative". This is actually faulty reasoning. By establishing an illegal $8.00 transaction the Government opens almost every transaction to its spurious claim of illegality. Over these 5 days, 78 of all transactions were above $8. That's over half of all the 142 totals. Unless it contends that the $8 transaction is an aberration, the Government has shown its calculations of losses to be even more random and speculative. It has debunked its own theory.

The Government is required, where it can, to prove a fraudulent wire, not a figure that represents the average of all transactions and start there. Nor can the assert that loss be based upon an average when compared to other store, without regard to location, reputation, friendless of service, offerings, discounts and a plethora of factors that go into a customer's choices. The court can have even less confidence in the 1.7 million now. Without proof, the court must consider that the number can just as likely go down as it can go up.

This video evidence is that further proof, for a jury and the court. It offers context, pattern, it proportions responsibility among the accused and gives the jury an insight into 5 typical days at Corner Groceries. One week does not year make, but it resembles a week and offers a clearer

path to postulate a month's losses and so forth. It offers a more reasoned way to arrive at losses than taking one transaction occurring in one day and leaping to the six-year figure for which that Mr. Shah is supposed to be held accountable.

The Government's loss theory collapses where every transaction is just as likely to be illegal in its estimate as any other. The Government's complicated inventory and sales analysis also failed as unreliable from its inception, where the Forensic Accountant agreed that cash sales were not counted. Yet again, this video evidence proves material to illustrate typical cash to SNAP ratios which can only help the jury or the court.

The Government could never point to any transactions or groups of transactions with any greater degree of certainty than any other. It has thrown the whole range of transactions now to the discretion of the court. 1.7 Million now goes as far out of the window as $59,000 in losses comes in as a possibility. Neither highs or lows being more proven than the other. The Government has helped the court to recognized that this new evidence is more relevant to understanding typical Customer and Defendant behaviors whether criminal or not. All else is conjecture.

Because the Defendant is entitled to his property in his defense- because the jury is entitled to witness actual transactions in evaluating guilt and, because the court is entitled to the benefit of any degree of certainty in its loss calculations to arrive at punishment, this evidence warrants a new trial.

The Government asserts that there was only one transaction over $26 on this video evidence which was legitimate. The court has the benefit of three transactions that the government contents are fraudulent. It must be apparent that the court and a jury would require additional testimony to conclude that these transactions amount to wire fraud. It is not only the video which the defendant was denied but it was the witnesses as well as The Defendant's own opportunity to testify which was withheld from him.

Even the Government admits:

> "However, in support of the defendants claim, there is a scat single, transaction for at actual food in the amount of $30.36.'
> (Government's Response page 11).
>
> The Defendant can assert and prove 78 transactions above $8.01. This is not a question of the preponderance of the evidence, but for everyone assertion of fraud, the Defense can now provide dozens of seemingly similar transactions for deeper analysis and closer scrutiny. This is what the jury is entitled to see, that they could not before, with only a single visual portraying him, and leaving out the context of compelling customers.

This evidence that the Defense seeks to have considered is even more compelling than that in Brady itself. Brady spoke of a statement helpful to the Defendant. This video evidence is hundreds of actions of the Defendants and depicts doing what he is charged with doing. Even an eye witness is not more reliable than a clear replay.

**While Always Available, The Video Became Evident During Trial on February 13th, 2018**

The court would have been able to compel The Government to provide access to it. It is probably for reasons of the potential delay that the Government withheld it. Its clear now that the Government thought the evidence was useless for most of the time it was in their possession. The unique thing about digital evidence is that its access is time stamped, leaving a digital trail. This video indicates it was first accessed on February 13th, 2018.-the day after the start of the trial. The time stamp markings show the first days were viewed on the 13th. Them the next on the 14th. and so forth. When it first became available, on February 13th, that is the third time the Government failed the court. The Government made no mention of it, despite knowing it had a continuing duty to correct the previous representations. To the extent it could comply with Brady and Rule 16 it should must. It's suppression of the evidence was truly complete then.

The Governments Chief Investigating Officer in December 2017 described this video evidence as "The Linchpin of their case. (See Government's Exhibit C, page 8). However, when it became viewable after the start of trial in February, it was as compelling as anyone could imagine. The problem was it was not the case that the Government had prepared at that point, so they sat on it… for six months.

The fourth and final suppression was this willful blindness, when it became viewable while still standing before the court. They did not advise the court of its existence or change of character or provide it to the Defense. The Government suggests that the best evidence of the alleged crime is now ancillary to the search for truth since the matter is now determined, as if the ends justify the means.

The question of whether it makes this evidence is more likely to change the result is not the sole applicable question here. The case that The Government put on would not win in the face of this evidence. They would be forced to put on an entirely different one, but so would the Defendant be armed with a piece of evidence for which he is more capable of speaking on and defending himself. The ability to convey what happened, and speak on it, to one's own salvation or peril, is the essence of Due Process. This alone could justify a new trial and it is proof positive that Due Process must remain the considered end and means.

## Conclusion

The New Video Evidence was intentionally suppressed in several ways. Its materiality toward the issue of guilt and punishment is beyond dispute. The government mischaracterizes what it depicts but concedes that it contains some exculpatory evidence. There is much more, but the view from the bench of the witness would pale in comparison to the live testimony which this evidence also begets. The video does not prove wire fraud alone and on its face, rather it is and gives rise to exculpatory evidence. The evidence of materiality to punishment is equally clear and uncontradicted by the Government. This court, any court, would benefit from such evidence to help to calculate losses which directly lead to punishment.

The Government's withholding of this evidence could have been lawful and avoided if it had openly declared the existence and condition of the evidence, both while it was unviewable beyond its control, but especially when it became viewable and useful. Then the Governments silence exceeded the mere violation of Brady and Rule 16. For this deprivation, the Defendant should be allowed a new fairer trial with his property and Due Process intact. The Jury, The Court and the interest of justice will be served by vacating the judgment and granting a new trial.


Respectfully Submitted,
Leonard H. Bennett Esq.

By: /s/*Leonard H. Bennett*
    Leonard H. Bennett
    Attorney For Mahmood Shah